UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

UNITED STATES OF AMERICA,    CR 05-328-1-RE

       Plaintiff,    OPINION AND ORDER

    v.

MICHAEL DYER,

       Defendant.

REDDEN, Judge:

    Before the court is Defendant Michael Dyer's Motion (doc. 95 in CR 05-329-RE) to Suppress Evidence and for the Return of Property.[1]  On January 16, 2009, the court held oral argument.  For the reasons set forth below, the motion is DENIED.

---

[1] On November 11, 2008, co-defendant Michelle White, CR 05-329-2-RE, filed this motion to suppress and for the return of property.  On December 30, 2008, White entered a plea agreement with the government and pleaded guilty.  Although White is no longer a party, the court must still resolve the motion because Defendant filed a joinder.

PAGE 1 - OPINION AND ORDER

Defendant was indicted along with twenty-one other Portland-area "second-hand store" owners and/or employees for conspiracy to transport stolen property in interstate commerce in violation of 18 U.S.C. § 2314, and money laundering in violation of 18 U.S.C. § 1956. According to the FBI, groups of "boosters" (commonly drug addicts) stole millions of dollars worth of new merchandise from retail stores in Oregon, Washington, California, and Idaho, and then sold the merchandise to second-hand stores to finance their drug habits. The government alleges that the defendant store owners and employees knowingly purchased stolen merchandise for a fraction of its retail value, and then sold the goods for substantial profit both online and to in- and out-of-state wholesalers.  To make its case against the second-hand store owners and employees, the FBI employed several informants who recorded hundreds of controlled transactions with the defendant stores involving stolen retail merchandise.

Following a nearly two-year investigation, FBI Special Agent Chris Frazier presented an Application and Affidavit for Search Warrant to Magistrate Judge Donald Ashmanskas, seeking authority to search defendant's business, Cash on the Run One, and his residence, among several other second-hand stores.  The Warrant Application and Affidavit focuses on obtaining evidence of four categories of criminal activity: (1) Transportation of Stolen Property in Interstate Commerce, in violation of  18 U.S.C. § 2314; (2) Purchase and Sale of Stolen Property in Interstate Commerce, in violation of 18 U.S.C. § 2315; (3) Money Laundering, in violation of 18 U.S.C. § 1956; and (4) Conspiracy to Commit Offenses Involving Interstate Transportation of Stolen Property, in violation of 18 U.S.C. § 2 and 18 U.S.C. § 371.

In support of the Warrant, FBI Agent Frazier explained that each of the targeted second-

hand stores were subject to City of Portland's Secondhand Dealers Ordinance.[2]  Under the ordinance, second-hand dealers who purchase "regulated property" are required to file with the Portland Police Bureau the seller's current picture identification, address, thumbprint, and a completed Declaration of Ownership.  The second-hand dealer must also affix a property tag to any "regulated" merchandise, and hold that property for thirty days to allow Portland Police to inspect and identify potentially stolen property.  "Regulated property" includes, among other things, precious metals, precious gems, watches, sterling silver, electronic equipment, photography equipment, tools, musical instruments and cases, firearms, sporting equipment, and household appliances.

Agent Frazier also explained that transactions involving "non-regulated" goods are more likely to involve stolen property because the ordinance's tracking requirements do not apply to that merchandise.  The Affidavit states, "the ordinance fails to address activities at secondhand dealer stores which are the focus of this investigation; the purchase and sale of 'non-regulated' property.  'Non-regulated' property is defined for the purpose of this affidavit as new merchandise, rather than used or secondhand . . . ."[3]  "Non-regulated" merchandise is not subject

---

[2]The purpose of the Secondhand Dealers Ordinance is to "regulate certain business activities that present an extraordinary risk of being used to dispose of stolen property."  Portland City Code § 14B.90.010.  Second-hand dealers process large volumes of goods that are frequently the subject of theft, and the ordinance "is intended to reduce this type of criminal activity by providing timely police awareness of such property transactions and by regulating the conduct of persons engaged in this business activity."  Id.

[3]"Non-regulated" merchandise includes, but is not limited to, over-the-counter medicine and health-and-beauty aids, such as Tylenol, Advil, Pepcid, Claritin, Zantac, Nicorette, Rogaine, razor blades, pregnancy test kits, diabetic test kits, electric toothbrushes, as well as computer software, printer cartridges, clothing, film, batteries, small electronics, computer and video games, DVDs, CDs, small kitchen appliances, etc.

PAGE 3 - OPINION AND ORDER

to the Secondhand Dealer Ordinance because it is often difficult to trace the ownership of such merchandise due to its generic, non-unique characteristics.

The relevant portion of the Warrant included the following description of property to be seized:

> f. <u>Suspected</u> stolen over-the counter pharmaceuticals (OTC) and health-and-beauty aids (HBA) <u>including, but not limited to,</u> Advil, Tylenol, Aleve Motrin, Sudafed, Pepcid AC, Senokot, Zantac, Preparation H, Alavert, Claritin, Allerest, Prilosec, Actifed, Tagamet, Nicoderm, Nicorette, Crest White Strips, Rogaine, Visine, diabetic test kits, pregnancy test kits, blood pressure monitors, and dietary supplements;
>
> g. <u>Suspected</u> stolen non-OTC/HBA merchandise <u>including, but not limited to</u>, computer software/hardware/accessories, ink jet cartridges, clothing, film, batteries, electronics, audio equipment, video equipment, DVDs, computer and video games, kitchen appliances, automotive and hand tools, electrical office equipment, arts-and-crafts supplies, power tools, herbicides, lawn/garden equipment, sporting equipment, precious metals and jewelry, precious gems, and colognes/perfumes[.]"

United States' Mem. in Resp., Ex. 3, at 4 (emphasis added). On August 24, 2005, law enforcement agents executed the warrants at Defendant's business and residence. The government ultimately seized thousands of dollars worth of allegedly stolen "regulated" and "unregulated" merchandise.

Defendant now moves to suppress the evidence seized on August 24, 2005, on the grounds that the search warrants: (1) were not supported by probable cause to seize "regulated" merchandise; and (2) lack sufficient specificity.[4]

---

[4] At the January 16, 2009 oral argument, Defendant proffered a photograph depicting several "pocket" motorbikes that he contends police seized without probable cause during the execution of the search warrant. The federal government represented to the court that it will not introduce evidence of the motorbikes at trial. Accordingly, Defendant's motion to suppress is moot as to that evidence.

PAGE 4 - OPINION AND ORDER

A search warrant must be supported by probable cause and must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. "The Fourth Amendment's specificity requirement prevents officers from engaging in general, exploratory searches by limiting their discretion and providing specific guidance as to what can and cannot be searched and seized." United States v. Adjani, 452 F.3d 1140, 1147 (9th Cir. 2006); see also United States v. Hillyard, 677 F.2d 1336, 1340 (9th Cir. 1982) ("The particularity guarantee does not preclude the use of generic language," but the warrant must contain "objective, articulated standards for the executing officers to distinguish between property legally possess and that which is not."). A warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional. Groh v. Ramirez, 540 U.S. 551, 559 (2004).

The level of detail required of a warrant, however, is related to the particular circumstances and the nature of the evidence sought. Adjani, 452 F.3d at 1147. "Warrants which describe generic categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible." Id. at 1147-48 (quotation omitted). Indeed, search warrants "must be read in a common sense and realistic fashion. The exclusionary was designed to deter police misconduct, not objectively reasonable law enforcement activity." United States v. Cannon, 264 F.3d 875, 880 (9th Cir. 2001).

Whether a warrant is sufficiently particular depends on several factors: (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe

PAGE 5 - OPINION AND ORDER

the items more particularly in light of the information available to it at the time the warrant was issued.  Adjani, 452 F.3d at 1148.  Probable cause exists if, under the totality of the circumstances, it would be reasonable to seek contraband or evidence crime in the place indicated in the affidavit.  United States v. Wong, 334 F.3d 831, 836 (9th Cir. 2003).

      Applying these factors, I conclude that the warrants and supporting Affidavit satisfied the specificity and particularity requirements of the Fourth Amendment.  First, law enforcement had probable cause to seize both "regulated" and "non-regulated" stolen merchandise at Defendant's business and residence.  The Affidavit describes numerous occasions on which Defendant, his co-owner, and/or his employees knowing bought and sold "non-regulated" stolen merchandise.  Indeed, Defendant does not appear to contend that the government lacked probable cause to seize "unregulated" stolen merchandise.  The Affidavit also sets out probable cause to believe Defendant's business knowingly purchased stolen "regulated" property.  See e.g., United States' Mem. in Resp., Ex. 1, Appx. D, at ¶ D-10 (boosters stated they sold stolen electronics to Defendant); id. ¶ D-19 (recorded conversation with co-defendant that even if a new item came in that she was required to report as regulated property, the retail store cannot prove do anything about it; "Unless they have, physically, on videotape that the person went in and stole that item, and brought it to me and sold it to me, they can't.  There's nothing they can do."); id. ¶ D-33 (discussing the large volume of bicycles the store purchased and noting that the bikes "seldom come up stolen because people don't mark their bikes and can seldom prove they are the actual owners").  That the investigation "focused" on unregulated merchandise does not preclude law enforcement from seizing merchandise that happens to be regulated, but for which they have probable cause to believe is stolen.  In light of Agent Frazier's detailed supporting Affidavit

PAGE 6 - OPINION AND ORDER

describing the type of criminal activity that took place at Defendant's store, I find that probable cause existed to believe that both "regulated" and "non-regulated" stolen merchandise might be found at Defendant's business and residence.

Second, the Warrant provided police with objective standards by which they were able to differentiate items subject to seizure from those which were not. The Warrant set out 15 specific categories of evidence to be seized. Within each category, Agent Frazier listed numerous examples of the type of evidence sought. Further, the Warrant and supporting Affidavit specified that the officers were investigating crimes involving the transportation, purchase, and sale of stolen property in interstate commerce, as well as money laundering. Because the Warrant and affidavit both described the type of criminal activity that the FBI was investigating, as well as the categories of evidence to be seized, I find that the Warrant was sufficiently specific so as to prevent an impermissible general, exploratory search. Cf. United States v. Federbush, 625 F.2d 246, 251 (9th Cir. 1980) (upholding a search warrant that listed various documents in generic terms because the warrant "specified the crime and the enterprise to which the items listed were to pertain."); United States v. Washington, 797 F.2d 1461, 1472 (9th Cir. 1986) (use of the phrase "including but not limited to" did not invalidate warrant when used in relation to specified criminal activity).

Finally, the warrants in this case were sufficiently specific under the circumstances. Second-hand businesses deal in a wide variety of merchandise, and much of the stolen retail merchandise in this case is of the kind that is bought and sold quickly and easily. In the supporting Affidavit, for example, Agent Frazier describes numerous specific occasions on which Defendant discussed buying or selling large quantities of stolen razor blades and diabetic

test strips. These are exactly the types of stolen merchandise that the warrant describes. Moreover, these are the kinds of retail items that are roughly interchangeable, generic, and non-unique. As such, they are difficult to track with any certainty. In light of volume of stolen merchandise in this case and the nature of second-hand businesses, it would be impracticable to require the police to describe the types of merchandise to be seized with any greater particularity.

Assuming arguendo, that the warrant and supporting Affidavit lacked probable cause to seize stolen both "regulated" and "non-regulated" stolen merchandise, I find that it was "not so overbroad as to be facially deficient." United States v. Michaelian, 803 F.2d 1042, 1048 (9th Cir. 1986). Thus, the officers were entitled to rely on the warrant in good faith. Id.

For these reasons, Defendant's Motion (doc. 95 in CR 05-329-RE) to Suppress Evidence and for the Return of Property is DENIED.

IT IS SO ORDERED.

Dated this 21st day of January, 2009.

/s/ James A. Redden
James A. Redden
Senior United States District Judge